**In the GUARDIANSHIP OF Leeman G. TISCHLER, an Incapacitated Person**

**No. 04-16-00084-CV**

Court of Appeals of Texas, San Antonio.

Delivered and Filed: October 12, 2016

Elizabeth C. Jandt, Jandt & Jandt, Seguin, TX, for Appellant.

Art Guzman, San Marcos, TX, for Appellee.

Sitting: Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice, Jason Pulliam, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

Garnet Blakeman appeals the trial court's order approving an account for final settlement and discharging Art Guzman as guardian of the person and estate of Leeman G. Tischler. Blakeman asserts the evidence is insufficient to support the trial court's approval of the account for final settlement. In addition, if the trial court erred in approving the account for final settlement, Blakeman contends the trial court also erred in discharging Guzman as guardian.

Because we conclude the trial court erred in approving the account for final settlement with regard to various monthly payments paid to Tischler, we reverse the trial court's order and remand the cause for further proceedings with respect to those monthly payments.

### BACKGROUND

On September 26, 2012, after determining Leeman G. Tischler was incapacitated, the trial court signed an order appointing Guzman as the guardian of Tischler's person and estate. Tischler was married to Laverne Opperman when Guzman was appointed.

On November 9, 2012, Guzman filed his bond and oath of guardian. On December 6, 2012, Guzman filed an inventory of Tischler's estate as of September 26, 2012. The trial court signed an order approving the inventory on December 13, 2012.

Tischler passed away on October 14, 2013, and Guzman filed an account for final settlement on December 18, 2013, stating it covered the period from September 27, 2012 to October 14, 2013. On October 29, 2014, Blakeman, one of Tischler's daughters from a prior marriage, filed objections

to the final accounting. On August 28, 2015, Guzman filed a memorandum in support of final accounting addressing the objections raised by Blakeman. On October 19, 2015, the trial court held a hearing on the account for final settlement and objections and subsequently signed an order approving the account for final settlement and discharging Guzman as guardian. Blakeman appeals.

## STANDARD OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury's verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review a trial court's factual findings under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support a jury's finding. *Id.*; *Monroe v. Monroe*, 358 S.W.3d 711, 716 (Tex. App.–San Antonio 2011, pet. denied). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.–San Antonio 2007, no pet.). We may not pass upon the credibility of the witnesses, or substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## GUZMAN'S OBLIGATIONS AS GUARDIAN OF TISCHLER'S ESTATE

Because Tischler was married to Opperman when Guzman was appointed as guardian of Tischler's estate and the trial court did not find Opperman was not suitable to serve as the community administrator of the couple's community estate, Guzman was only responsible for administering Tischler's separate property. *See* TEX. ESTATES CODE ANN. §§ 1353.002–.004 (West 2014). Accordingly, Guzman was responsible for possessing and managing all of Tischler's separate property. *Id.* § 1151.101(a).

When Tischler died, the guardianship of his estate was required to be settled, and Guzman was required to present a verified account for final settlement to the court. *Id.* §§ 1204.001(b)(1), 1204.101. An account for final settlement may (1) refer to the inventory without describing each item of property in detail, and (2) refer to and adopt any court proceedings concerning a transaction on behalf of the guardianship estate without restating the particular items. *Id.* § 1204.102.

## TRIAL COURT'S OBLIGATIONS REGARDING ACCOUNT FOR FINAL SETTLEMENT

■ After the account for final settlement is filed, the trial court must examine the account. *Id.* 1204.106(a). The trial court must all hear all "objections to the account and evidence in support of or against the account." *Id.* § 1204.106(b). If an objection is filed, "it is [i]ncumbent upon the guardian to establish the essential facts supporting the contested items of the account by competent evidence." *In re Rasco*, 552 S.W.2d 557, 560 (Tex. Civ. App.–Dallas 1977, no writ). After the hearing, the trial court must "audit and settle the account and, if necessary, restate the account." TEX. ESTATES CODE § 1204.106(b). "[I]f, on final settlement of the estate, none of the estate remains in the guardian's possession," the trial court "shall enter an order discharging [the] guardian from the guardian's trust and closing the guardianship estate." *Id.* § 1204.151.

## MONTHLY PAYMENTS TO TISCHLER

In her first five objections,[1] Blakeman complained about Guzman's accounting with respect to the following monthly payments to Tischler: (1) Social Security, (2) DFAS military retirement, (3) federal reserve retirement, (4) National Financial Services IRA distribution, and (5) VA disability benefits. The bank statements from Tischler's and Opperman's joint account show all five of these monthly payments were being paid into their joint account before Guzman was appointed as guardian.

### A. Evidence and Arguments Regarding Monthly Payments

■ After Guzman was appointed as guardian, he opened a guardianship account at the same financial institution as the joint account by transferring $37,842.67 from the joint account to the guardianship account on November 28, 2012. After that transfer, the following monthly payments were still deposited into the joint account: (1) December 3, 2012 social security payment; (2) November 30, 2012 DFAS retirement payment; (3) December 5, 2012 and January 5, 2013 National Financial Services IRA distributions; (4) federal reserve retirements payments for November 30, 2012 through September 30, 2013; and (5) VA disability payments for November 30, 2012 through May 31, 2013. In the account for final settlement, Guzman separately lists a total revenue amount the guardianship estate received from the Social Security Administration, DFAS military retirement, and National Financial Services IRA distribution; however, the bank statements reveal the total amount of the payments received from these sources is more than the amounts listed in the account for final settlement. In addition, the account for final settlement does not list any revenues received by the guardianship estate from the federal reserve retirement or VA disability benefits.

In his memorandum in support of final accounting and at the hearing before the trial court, Guzman asserted the objection should be overruled because the amount transferred from the joint account to open the guardianship account exceeded the total amount Blakeman contended was not accounted for from the five monthly payment sources. In the memorandum, Guzman explained his position as follows:

Subsections a-e referenced above [Blakeman's first five objections] total $34,755.52. The Guardian rolled over the

---

1. In our opinion, we address only the objections Blakeman references in her amended appellant's brief.

sum of $37,843.67 [2] on or about December 1, 2012 from a joint account held by the Ward and his spouse LAVERNE OPPERMAN. According to LAVERNE OPPERMAN, the amount deposited originated from monies derived from her husband's resources. This deposit was denoted in the inventory previously filed with, and approved by, this Court. At the time the monies were deposited, Ms. Opperman and the Ward were residing together as a married couple. She was paying for his care provider, food and other necessities. The legal argument could have been made by the Ward's spouse that the community property presumption applied in this case. There not being a divorce on file, the Guardian does not believe that he would have had standing to overcome that presumption. Further, a spouse has a legal duty to support his/her spouse in Texas during marriage. The character of the funds (community/separate), is irrelevant.

At the hearing before the trial court, Blakeman's attorney asserted the five monthly payments were Tischler's separate property. During closing argument, Blakeman's attorney argued as follows:

Your Honor, we're here because we believe that the guardian failed to take into his custody and care and account for all of the income of Mr. Tischler, and I think when you look at the exhibits and that and the corresponding No. 9, you will see that it was not protected and that it was left in other accounts. This was definitely income that would not have been considered income from a community estate. It was his separate income. If there was a belief that the— his alleged wife did not have sufficient income then that should have been

something that was where she would have filed an application for some type of a stipend to take care of her during that time, but it was not, and we feel like that the guardian did not account for all of the income.

## B. Applicable Law

 As previously noted, Guzman was responsible for administering Tischler's separate estate. TEX. ESTATES CODE § 1151.101(a). Social security benefits are not community property. *In re Marriage of Ford*, 435 S.W.3d 347, 350 n.2 (Tex. App.–Texarkana 2014, no pet.); *Granger v. Granger*, 236 S.W.3d 852, 857 (Tex. App.–Tyler 2007, pet. denied). Similarly, VA benefits are not community property. *See Hagen v. Hagen*, 282 S.W.3d 899, 901 n.1 (Tex. 2009). Finally, retirement benefits accrued prior to marriage are separate property. *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App.–Houston [1st Dist.] 2016, pet. denied); *Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122 (Tex. App.–San Antonio 1996, writ denied).

## C. Analysis

Based on the evidence and arguments presented to the trial court, Guzman was required to administer and account for all five monthly payments to Tischler. Guzman's listing on the inventory of the amount initially transferred from the joint account does not account for the payments made from September 27, 2012 through October 14, 2013. The account of final settlement fails to account for two monthly payments, and the bank statements establish the amounts listed as revenues from the three other monthly payments are inaccurate. Therefore, the evidence is legally and factually insufficient to support the

---

**2.** The actual amount rolled over was $37,848.67. Of this amount, $5.00 was deposited into savings and $37,843.67 was deposited into checking. Both the savings and checking account have the same account number.

trial court's approval of the account of final settlement with regard to the five monthly payments to Tischler.

### DIVIDENDS ON ACCOUNTS

█ Blakeman also objected that Guzman failed to account for dividends paid by the financial institution into both the joint account and the guardianship account. Guzman was not, however, required to account for the joint account which was community property. *See* TEX. ESTATES CODE § 1353.002. With regard to the dividends paid into the guardianship account, Guzman explained that the dividends were included in the final balance remaining in that account as listed in the account for final settlement.[3] The bank statements introduced into evidence support Guzman's explanation. Accordingly, the evidence is legally and factually sufficient to support the trial court's approval of the account for final settlement with regard to the dividends.

### OPPENHEIMER FUNDS AND TRIVENT FINANCIAL FUNDS

█ Blakeman next objected to Guzman's failure to account for payments from Oppenheimer Capital Appreciation Fund A, Oppenheimer Gold and Special Minerals Fund, and Trivent Financial. All of these funds, however, are listed in the original inventory. *See id.* § 1204.102 (noting account for final settlement may refer to the inventory without describing each item of property in detail). Furthermore, the bank statements which were introduced into evidence establish the payments from the funds were deposited into the guardianship account, and the final guardianship account

balance is included in the account for final settlement. Therefore, the evidence is legally and factually sufficient to support the trial court's approval of the account for final settlement as to the payments from these funds.

### RENTAL PAYMENT, IRS TAX REFUND CHECK, AND PREMIUM REFUND CHECK

█ Blakeman also objected to Guzman's failure to account for rental income from a house, a refund check from the IRS, and a refund check for premiums paid for a long term care policy. The evidence does not, however, establish that any of these items were Tischler's separate property subject to Guzman's administration. For example, the inventory reflects Mr. Tischler's ownership of the house was either community property or as the beneficiary of the trust. In addition, the evidence established the income tax refund check related to Tischler and Opperman's 2012 joint tax return. Finally, the bank statements establish the premiums were paid from the joint account. Accordingly, the evidence is legally and factually sufficient to support the trial court's approval of the account of final settlement as to these payments.

### AUTOMOBILES

█ Finally, Blakeman objected to Guzman's accounting with regard to two automobiles. Blakeman acknowledges that these automobiles were listed in the inventory. *See* TEX. ESTATES CODE § 1204.102 (noting account for final settlement may refer to the inventory without describing each item of property in detail). Furthermore, Guzman testified at the hearing, and

---

**3.** We note the account for final settlement's reference to the joint account number, as opposed to the guardianship account number, in stating the final balance in the account is an obvious typographical error revealed by simply comparing the bank statements which were admitted into evidence with the final balance set forth in the account for final settlement.

the trial court acknowledged, that the sale of the automobiles was approved by the trial court. *See id.* (noting account for final settlement can refer to and adopt any court proceedings concerning a transaction on behalf of the guardianship estate without restating the particular items). Finally, the account for final settlement reflected the final account balance for the guardianship account. Accordingly, the evidence is legally and factually sufficient to support the trial court's approval of the account for final settlement as to the two automobiles.

### CONCLUSION

The evidence is legally and factually sufficient to support the trial court's approval of the account for final settlement except with regard to the following monthly payments to Tischler: (1) Social Security, (2) DFAS military retirement, (3) federal reserve retirement, (4) National Financial Services IRA distribution, and (5) VA disability benefits. Accordingly, the trial court's order is reversed, and the cause is remanded to the trial court for further proceedings regarding the foregoing monthly payments, the discharge of the guardian, and the closing of the guardianship estate.[4]

---

4. We note Guzman testified that all of the assets of the guardianship estate have been transferred to the temporary administrator of Tischler's probate estate. *See* TEX. ESTATES CODE § 1204.151 (providing for discharge of guardian and closing of guardianship estate on final settlement of the estate if none of the estate remains in the guardian's possession).