

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00460-CV

Jason **CAMPBELL**,
Appellant/Cross-Appellee

v.

Ben **LUONG**,
Appellee/Cross-Appellant

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-10868
Honorable Solomon Casseb, III, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: July 19, 2017

AFFIRMED

This appeal and cross-appeal arise from a dispute over a 0.5% real estate commission. After a bench trial, the trial court awarded judgment in favor of Dr. Ben Luong, finding Jason Campbell violated the DTPA, breached a fiduciary duty owed to Luong, and engaged in common law fraud.[1] Campbell presents five issues on appeal contending: (1) the statute of frauds bars the enforceability of any commission agreement between the parties; (2) Luong ratified the agreement

---

[1] Luong also obtained a judgment against the broker David McMillan, individually and d/b/a Covenant Partners Realty, however, McMillan is not a party to this appeal.

to pay Campbell a 2.45% commission by closing the sale of the property; (3) the evidence is insufficient to support the trial court's liability findings or, alternatively, Luong was not entitled to pursue tort claims against Campbell; and (4) the trial court erred in awarding appellate attorney's fees that were not conditioned on a successful appeal. In his cross-appeal, Luong contends the trial court erred by: (1) reducing the amount of attorney's fees awarded; (2) not awarding appellate attorney's fees and denying Luong's request to introduce a supplemental affidavit as evidence to support an award of appellate attorney's fees; (3) failing to find Campbell engaged in fraud in a real estate transaction; (4) failing to award expert witness fees; and (5) failing to award prejudgment interest. We affirm the trial court's judgment

## BACKGROUND

After Campbell successfully located a tenant for a property owned by Luong, Luong requested his services in listing two of his other properties for sale. One property was located on Encino Valley, and the other on Gramercy.

Luong purchased the properties with the intent to remodel them and sell them for a profit. Luong was working with Evan Jacobson to "flip" the properties but subsequently alleged Jacobson had stolen some of the money Luong paid him for work to be performed on the properties. Because Jacobson had threatened to place liens on the properties, Luong wanted to quickly sell the properties.

In an initial email, Luong offered to pay Campbell a 4.95% commission,[2] with Campbell receiving a 1.95% commission as the seller's agent and the buyer's agent receiving a 3.0% commission. Luong testified he had two other realtors willing to accept a 5.0% commission, but Campbell agreed to the 4.95% commission if Luong listed multiple properties with him.

---

[2] The commission would be paid to the broker under whose license Campbell conducted his business as a real estate agent; however, for ease of reference, we refer to the commission being paid to Campbell.

Campbell sent listing agreements to Luong for both the Encino Valley and Gramercy properties which listed the total commission as 1.95% (instead of the 4.95%) out of which Campbell would pay the buyer's agent a 3.0% commission. Luong made several changes to the agreements before signing them and returning them to Campbell. One of the changes stated, "if the seller finds a buyer himself, realtor will not receive 1.95% commission."

Upon receiving the agreements from Luong, Campbell discovered the agreements provided the total commission to be paid was 1.95% instead of 4.95%. Campbell testified he changed the commission in the Encino Valley agreement to 4.95% before signing the agreement. Although Campbell testified he emailed the amended agreement to Luong, Luong testified he never received the amended agreement and introduced evidence from his internet email provider to further prove he did not receive an email with the amended agreement.

After Campbell located a buyer for the Encino Valley property, Luong and the buyer signed an earnest money contract. Although the commission to be paid the buyer's agent was typewritten in the broker information section of the earnest money contract as 3.0%, that percentage was marked through and a 2.5% commission was interlineated. Campbell testified he spoke with Luong about this change, and Luong agreed the additional 0.5% commission would be paid to Campbell for the extra work he performed in locating a buyer. Luong, however, testified he never discussed the reduction in the amount of the commission to be paid the buyer's agent with Campbell and believed the 0.5% savings contained in the earnest money contract would reduce the total amount of the commission Luong would be required to pay. The buyer's realtor testified Campbell contacted him and stated Luong would only pay 2.5%, and he agreed to the change. The buyer's agent was not aware the listing agreement provided the buyer's agent would be paid 3.0%.

Although the earnest money contract provided the buyer would purchase the property in its present condition, Luong and the buyer subsequently signed an addendum to adjust the portion

of the purchase price to be paid in cash.[3]  The addendum also contained the following language which Luong testified was a mistake because the buyer was supposed to fix the defects:

> Within 6 months, Buyer is to show proof to seller after closing that seller will fix defects listed on buyer's inspection report by licensed contractor(s) with permits (if permit is required) so the house is in good and sellable condition in case buyer defaults on the mortgage.  Seller will try to obtain refund from seller's contractor. If refund is obtained, Seller will credit Buyer refund toward his monthly payment.

The buyer's realtor testified the additional language in the addendum was a surprise and a bonus to the buyer because they had not negotiated for Luong to fix the defects.  Campbell testified Luong contacted him to prepare the addendum because he agreed to those terms with the buyer.  Campbell also testified and introduced an email to show he informed Luong he should obtain an additional hold harmless agreement from the buyer because of the language in the addendum.  Luong testified he was not aware of the mistake until after closing, and Campbell told him the mistake was Luong's problem.

Prior to closing, Luong received the HUD-1 showing the amounts that would be deducted from the sales price at closing.  The HUD-1 showed that Campbell would receive a 2.45% commission, and the buyer's agent would receive a 2.5% commission.  Luong contacted the title company's escrow officer, Cheryl Luna, who told him he would need to speak with Campbell.  An email was introduced into evidence showing that Campbell provided Luna with the commission percentages to be paid at closing in response to Luna's request for that information.  Although Luong provided Luna with a copy of the listing agreement showing Campbell was to be paid a 1.95% commission, Luong proceeded to close without any revisions to the HUD-1 because he

---

[3] The balance of the sales price was seller financed.

believed a "compliance agreement" provision in one of the documents signed at closing would allow him to recover the 0.5% commission erroneously paid to Campbell.[4]

After closing, Campbell asked Luong to sign a hold harmless agreement stating Campbell would not be responsible for the mistake in the addendum to the earnest money contract, but Luong refused. Approximately one month after closing, Luong emailed Campbell requesting his assistance in locating a buyer for the Gramercy property. Campbell refused to help Luong if Luong did not sign the hold harmless agreement. In response to Campbell's refusal, Luong made his first reference to Campbell illegally taking the additional 0.5% commission. Approximately two years later, Luong filed the underlying lawsuit asserting claims for breach of contract, violations of the DTPA, common law fraud, fraud in a real estate transaction, and breach of fiduciary duty.

As previously noted, after a bench trial, the trial court awarded judgment in favor Luong, finding Campbell violated the DTPA, breached a fiduciary duty owed to Luong, and engaged in common law fraud. The trial court awarded Luong $1,175 in actual damages, $3,525 in treble damages under the DTPA, and $14,000 in attorney's fees. Campbell and Luong both appeal.

## STANDARD OF REVIEW

Both Campbell and Luong raise various sufficiency challenges in their briefs.

In an appeal from a bench trial, we apply the same sufficiency standards in reviewing the trial court's factual findings as we apply in determining whether sufficient evidence exists to support a jury's finding. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *In re Guardianship of Tischler*, 505 S.W.3d 73, 76 (Tex. App.—San Antonio 2016, no pet.). As the

---

[4] The compliance agreement provision stated: "The undersigned [Luong and the buyer] agree to comply with all provisions of the real estate contract, Lender's closing instructions, or other documents executed in connection with the closing of this transaction. The undersigned further agree to fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned real estate contract, Lender's closing instructions or other documents executed in connection with the closing of this transaction, including the payment of attorney's fees incurred in enforcing the terms of this compliance agreement."

factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re Guardianship of Tischler*, 505 S.W.3d at 76. "The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony." *In re Guardianship of Tischler*, 505 S.W.3d at 76. We "may not pass upon the witnesses' credibility or substitute [our] judgment for that of the [trial court,] even if the evidence would clearly support a different result." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

With regard to issues on which the opposing party had the burden of proof, the test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id*. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

"A party attempting to overcome an adverse fact finding as a matter of law [on an issue upon which that party had the burden of proof] must surmount two hurdles." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). First, we examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id*. Second, if no evidence supports the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id*.

In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Maritime Overseas Corp.*, 971 S.W.2d at 406-07. We set aside the

judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

## I.  CAMPELL'S APPEAL

### REAL ESTATE LISTING/COMMISSION AGREEMENT

In his first issue, Campbell contends the evidence establishes the statute of frauds bars Luong's enforcement of the commission agreement.  In its findings of fact and conclusions of law, the trial court found Luong had a valid contract to pay Covenant Partners Realty, the broker under which Campbell worked, a 1.95% commission on the sale of the Encino Valley property.  Therefore, Campbell appears to be challenging the finding that the commission agreement was valid because he argues the agreement was barred by the statute of frauds.

Even if the trial court erred in finding Luong had a valid contract, however, the error would not require reversal because the trial court did not find Campbell breached the commission agreement or award any damages to Luong for his breach of contract claim.  *See* TEX. R. APP. P. 44.1 (providing judgment may not be reversed on appeal if error did not cause the rendition of an improper judgment).  Accordingly, we need not further address this issue.

### RATIFICATION

In his second issue, Campbell challenges the sufficiency of the evidence to support the trial court's finding that Luong did not ratify the commission percentage by closing on the sale.

The elements of the affirmative defense of ratification are: (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intent to validate the earlier act.  *Bank of Am., N.A. v. Prize Energy Res., L.P.*, 510 S.W.3d 497, 505-06 (Tex. App.—San Antonio 2014, pet. denied); *Neese v. Lyon*, 479 S.W.3d 368, 384 (Tex. App.—Dallas 2014, no pet.).  In this case, Luong testified he never approved paying Campbell the additional 0.5% commission and believed he would be able to recover the overpaid commission after closing.

Although Campbell argues the compliance provision in the closing documents cannot be used to "fix" the amount of the commission paid because Campbell was not a party to the closing documents, Luong does not rely on the compliance provision to "fix" the commission. Instead, Luong refers to the compliance provision to support his belief that he would be able to recover the overpaid commission after closing so that his decision to proceed with the closing was not an approval of the amount of the commission paid. In raising his objection to the commission amounts listed in the HUD-1, Luong evidenced his belief that no binding contract required him to pay Campbell the additional 0.5%. Because the trial court, as the sole judge of Luong's credibility, could have believed Luong's testimony, the evidence is sufficient to support the trial court's finding that Luong did not ratify the payment of the additional 0.5% commission to Campbell.

## LIABILITY FINDINGS

In his third issue, Campbell challenges the sufficiency of the evidence to support the trial court's liability findings, specifically that he engaged in common law fraud, violated the DTPA, and breached a fiduciary duty. Because Luong was awarded his damages based on the trial court's finding that Campbell violated the DTPA, we address that claim first.

"The DTPA prohibits '[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce.'" *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 501 (Tex. 2001) (quoting TEX. BUS. & COM. CODE ANN. § 17.46(a) (West Supp. 2016)). A consumer may recover under the DTPA by establishing the defendant made a misrepresentation that was the producing cause of the consumer's damages. *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002).

In this case, Luong testified that Campbell represented he would charge a 1.95% commission for listing the Encino Valley property. Although Campbell testified he discussed with Luong his receipt of the additional 0.5% of the commission that was saved in only paying the buyer's agent a 2.5% commission, the trial court could have disbelieved Campbell's testimony.

Instead, the trial court could have believed Luong only discovered Campbell was being paid the additional 0.5% commission after Luong reviewed the HUD-1 statement which is consistent with his email to Luna. Furthermore, the trial court could have believed Luong's testimony that he thought the 0.5% savings contained in the earnest money contract would reduce the total amount of the commission he would be required to pay.

Having reviewed the record as a whole, we hold the evidence is sufficient to support a finding that Campbell misrepresented he would only collect a 1.95% commission. Because we hold the evidence is sufficient to support the trial court's finding that Campbell violated the DTPA, we do not address the sufficiency of the evidence to support the trial court's other liability findings. *See* TEX. R. APP. P. 47.1 (providing opinions should only address issues necessary to final disposition of appeal).

## BREACH OF CONTRACT V. DTPA CLAIM

In his fourth issue, Campbell argues the parties' dispute related to Campbell's failure to perform in accordance with the listing agreement; therefore, Luong's tort claims were not actionable.

In support of his argument, Campbell cites *Chilton Ins. Co. v. Pate Enters. Inc.*, 930 S.W.2d 877 (Tex. App.—San Antonio 1998, writ denied). In that case, this court recognized that "disputes relating to contract performance based on differing contract interpretations do not rise to the level of DTPA violations." *Id*. at 889; *see also Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) ("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."). Instead, "conduct must involve more than a mere breach of contract in order to rise to the level of a false, misleading, or deceptive act sufficient to invoke the rights and remedies of the DTPA." *Chilton Ins. Co.*, 930 S.W.2d at 889. "The determination of whether a breach of contract rises to the level of a misrepresentation

sufficient to trigger the DTPA is a fact-driven inquiry." *Id*. at 890. "After the facts have been ascertained, whether they constitute a DTPA-level misrepresentation is a question of law." *Id*.

In this case, Campbell represented he would list Luong's Encino Valley property for a 1.95% commission. In an effort to circumvent this limit on his commission, Campbell renegotiated the commission to be paid to the buyer's agent. Campbell engaged in these efforts in order to receive an additional 0.5% commission; however, Luong believed the 0.5% savings would reduce the total commission he was required to pay. Furthermore, Luong testified he only discovered Campbell increased the amount of his commission when Luong reviewed the HUD-1 closing statement. Therefore, the evidence established that Campbell's actions involved more than a mere breach of contract and rose to the level of a misleading or deceptive act sufficient to invoke the rights and remedies of the DTPA.

## APPELLATE ATTORNEY'S FEES

In his fifth issue, Campbell contends the trial court erred in awarding unconditional appellate attorney's fees. The trial court's order, however, states as follows:

> IT IS FURTHER ORDERED that the Court hearing argument by the Plaintiff regarding its request for an award of attorney's fees upon appeal of this case finds the following:
>
> The Court takes judicial notice of attorney's fees on appeal and assesses each parties' attorney's fees against that party for any appeal.

With regard to the law, Campbell is correct that "'[a]ny award of attorney's fees on appeal must be conditioned on the receiving party's success.'" *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 674 n.3 (Tex. App.—San Antonio 2008, no pet.) (quoting *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ)). In this case, however, the trial court did not award either party appellate attorney's fees.

## II. LUONG'S CROSS-APPEAL

### ATTORNEY'S FEES

In his first issue on appeal, Luong contends the trial court erred in only awarding him $14,000 in attorney's fees as opposed to the $21,860.25 he requested. Luong heavily relies on a Rule 11 agreement between the parties, arguing Campbell stipulated that the attorney's fees Luong would establish by affidavit were reasonable and necessary. Luong also argues that the trial court erred in reducing the attorney's fees awarded based on the amount of actual damages awarded.

Under the DTPA, a prevailing consumer "shall be awarded court costs and reasonable and necessary attorneys' fees." TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011). Whether attorney's fees are reasonable and necessary are questions of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). In limiting its award of attorney's fees to $14,000, the trial court implicitly found $14,000 was the amount of attorney's fees that were reasonable and necessary.

Luong first relies on the parties' Rule 11 agreement which he argues is a stipulation regarding the reasonableness of the attorney's fees he was requesting. Before trial, Luong's attorney announced Luong and Campbell entered into a Rule 11 agreement, and dictated the terms of the agreement into the record as follows:

> …. the parties agreed — and, again, by "parties" we mean Ben Luong and Jason Campbell — that they will be permitted to enter into evidence and prove their attorneys [sic] fees via affidavit submission. Plaintiff and defendant Jason Campbell will not object to this submission of attorneys [sic] fees by affidavit and herein waive all procedural and evidentiary challenges regarding same. Plaintiff and Defendant Campbell also agree they will not make any objections to the amount of time worked by plaintiff's or Defendant Campbell's attorneys or the reasonableness of the hourly rate they charged or are charging. Defendant Campbell reserves the right to challenge the attorneys [sic] fees claimed by plaintiff on the specific basis that, given the amount in controversy in this lawsuit, the attorneys [sic] fees requested by plaintiff are not reasonable and necessary and should be denied.

We disagree that the terms of the Rule 11 agreement precluded the trial court from determining the reasonableness of the amount of attorney's fees to award. Although the parties agreed to the procedure by which the evidence of the attorney's fees was to be offered and agreed not to object to that evidence, the parties did not stipulate that the amount requested was reasonable and necessary. Instead, the parties specifically agreed that Campbell reserved the right to challenge whether the attorney's fees were reasonable and necessary given the amount in controversy.

Luong next contends the trial court could not reduce the amount of attorney's fees awarded based on the amount of the damages awarded. Luong's argument appears to be based on the following sentence contained in the trial court's first order, "The Court finds while there is no dispute as to the reasonableness and necessity of the hours worked by Plaintiff's Attorneys or their hourly rates, given the amount of actual damages in this case, a full award of attorney's fees is not appropriate." This sentence, however, does not appear in the trial court's amended order which does not specify the reason the trial court did not award the full amount of attorney's fees Luong requested.

Even if the trial court considered the amount of damages awarded, however, the Texas Supreme Court has instructed one of the factors a factfinder should consider in determining the reasonableness of attorney's fees is the amount involved and the results obtained. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) (citing *Arthur Anderson & Co v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)); *see also Metroplex Mailing Services, LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (noting attorney's fees should bear some reasonable relationship to the amount in controversy); *USAA County Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 103 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same). Therefore, the trial court could have considered the amount of damages recovered in determining a reasonable amount of attorney's fees to award. Luong's first issue is overruled.

**APPELLATE ATTORNEY'S FEES**

Luong's second and sixth issues are related. In his second issue, Luong contends the trial court erred in not awarding him conditional appellate attorney's fees. Acknowledging that he did not present proof of such fees at trial, Luong's sixth issue contends the trial court erred in not allowing him to supplement the evidence under Rule 270 of the Texas Rules of Civil Procedure.

Rule 270 provides, in pertinent part, "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time." TEX. R. CIV. P. 270. We review a trial court's decision not to allow additional evidence under an abuse of discretion standard. *Moore v. Jet Stream Inv., Ltd.*, 315 S.W.3d 195, 201 (Tex. App.—Texarkana 2010, pet. denied). In deciding whether to permit additional evidence, a trial court may consider the following factors: (1) whether the movant showed due diligence in obtaining the evidence; (2) whether the additional evidence is decisive; (3) whether reopening the evidence will cause undue delay; and (4) whether reopening the evidence will cause injustice. *Moore*, 315 S.W.3d at 201; *Naguib v. Naguib*, 137 S.W.3d 367, 373 (Tex. App.—Dallas 2004, pet. denied). "[I]f all of the factors are not satisfied, a trial court's ruling on a party's motion to reopen the evidence should not be disturbed." *Naguib*, 137 S.W.3d at 373.

In this case, Luong did not seek to introduce his supplemental affidavit regarding appellate attorney's fees until four months after the conclusion of trial. Because the trial court could have determined Luong did not exercise due diligence in obtaining the evidence, the trial court did not abuse its discretion in denying his request to supplement the record, and Luong's sixth issue is overruled. Furthermore, because the record does not contain any other evidence to support an award of conditional appellate attorney's fees to Luong, Luong's second issue also is overruled.

**FRAUD IN A REAL ESTATE TRANSACTION**

In his third issue, Luong contends the trial court erred in failing to find Campbell committed statutory fraud in a real estate transaction.

As previously noted, "[a] party attempting to overcome an adverse fact finding as a matter of law [on an issue upon which that party had the burden of proof] must surmount two hurdles." *Sterner*, 767 S.W.2d 690. First, we examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id*. Second, if no evidence supports the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id*.

"The elements of statutory fraud are (1) a transaction involving real estate or stock; (2) the defendant made a false representation of a past or existing material fact or made a promise to do an act with the intention of not fulfilling it; (3) the false representation or promise was made for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract." *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 443 (Tex. App.—Dallas 2014, pet. denied); *see* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (West 2015). In this case, the trial court could have refused to find Campbell engaged in statutory fraud by finding Campbell intended to list the property in exchange for his receipt of 1.95% commission with the buyer's agent receiving a 3.0% commission. Although Campbell changed the listing agreement to provide the total amount of commission to be paid was 4.95%, Campbell explained he made the change because the listing agreement provided for the 3.0% commission to be paid to the buyer's agent to be paid out of the total commission paid to Campbell. Based on this testimony, the trial court could have believed Campbell intended to fulfill his promise to list the property in exchange for his receipt of a 1.95% commission at the time the parties entered into the listing agreement. The trial court could also

have believed Campbell's deceptive or fraudulent act occurred later when Campbell negotiated a reduction in the commission to be paid to the buyer's agent with the intention of pocketing the reduction rather than reducing the total commission Luong would be required to pay. Since the trial court could have believed Campbell's testimony that he intended to list the property in exchange for his receipt of a 1.95% commission at the time the parties entered into the listing agreement, the evidence supports the trial court's refusal to find that Campbell did not engage in statutory fraud.

### EXPERT WITNESS FEES

In his fourth issue, Luong contends the trial court erred in not awarding him expert witness fees because he prevailed on his statutory fraud claim. Because we hold the evidence supports the trial court's refusal to find that Campbell did not engage in statutory fraud, we need not further address this issue.

### PREJUDGMENT INTEREST

In his final issue, Luong contends the trial court erred in failing to award prejudgment interest. Campbell does not respond to this issue.

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (internal quotation omitted). "There are two legal sources for an award of pre-judgment interest: (1) general principles of equity and (2) an enabling statute." *Id.* "If no statute requires pre-judgment interest to be awarded, a court has the discretion to award pre-judgment interest if it determines an award is appropriate based on the facts of the case." *Hoelscher v. Kilman*, No. 03-04-00440-CV, 2006 WL 358238, at *5 (Tex. App.—Austin Feb. 16, 2006, no pet.) (mem. op.).

Section 17.50 of the DTPA sets forth the relief available to consumers under the DTPA. TEX. BUS. & COM. CODE ANN. § 17.50 (West 2011). Unlike section 17.50(d) which provides "[e]ach consumer who prevails ***shall*** be awarded court costs and reasonable and necessary attorneys' fees," section 17.50(f) states a court ***may not*** award prejudgment interest applicable to: (1) damages for future loss; or (2) additional damages. *Id*. at § 17.50(d), (f) (emphasis added). Although section 17.50(f) appears to implicitly allow a trial court to award prejudgment interest on actual or economic damages for past loss, section 17.50 does not contain any provision ***requiring*** an award of prejudgment interest. As a result, we review the trial court's decision not to award prejudgment interest under an abuse of discretion standard. *Hoelscher*, 2006 WL 358238, at *5.

In this case, the trial court could have determined that Luong's recovery of actual damages, additional damages, and attorney's fees was adequate compensation. *See Hameed Agencies (pvt) Ltd. v. J.C. Penney Purchasing Corp.*, No. 11-05-00140-CV, 2007 WL 431339, at *6-7 (Tex. App.—Eastland Feb. 8, 2007, pet. denied) (mem. op.). Alternatively, the sale of the Encino Valley property occurred in May of 2012, but Luong did not file his lawsuit until July 10, 2014. In addition, trial did not commence until May 2, 2016. "The award of prejudgment interest during periods of delay is generally left to the discretion of the trial court." *Helena Chem. Co. v. Wilkins*, 18 S.W.3d 744, 760 (Tex. App.—San Antonio 2000), *aff'd*, 47 S.W.3d 486 (Tex. 2001). In this case, "the trial court could have concluded that the circumstances surrounding [the] delay made a prejudgment interest award inequitable." *Hameed Agencies (pvt) Ltd.*, 2007 WL 431339, at *7. Luong's final issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice