**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00520-CV

————————————

**SHEILA OWENS-COLLINS, Appellant**

**V.**

**DANA DREXLER, TEMPORARY GUARDIAN OF THE PERSON AND ESTATE OF HATTIE B. OWENS, INCAPACITATED, GUS TAMBORELLO, SUBSTITUTED ATTORNEY FOR DANA DREXLER, TEMPORARY GUARDIAN OF THE PERSON AND ESTATE OF HATTIE B. OWENS, INCAPACITATED, HATTIE SHANNON, ATTORNEY AD LITEM OF THE ESTATE OF HATTIE B. OWENS, INCAPACITATED, MELBOURNE BERLINGER, GUARDIAN AD LITEM OF THE ESTATE OF HATTIE B. OWENS, INCAPACITATED, AND GEOFFREY SANSOM, ATTORNEY AD LITEM OF THE ESTATE OF HATTIE B. OWENS, INCAPACITATED, Appellees**

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Case No. 461,718**

## MEMORANDUM OPINION

This is an appeal from a guardianship proceeding. The proposed ward—Hattie Owens—died during the pendency of the proceeding. The probate court awarded fees and expenses to an attorney ad litem, guardian ad litem, and temporary guardian. Owens's daughter, Sheila Owens-Collins, appeals challenging these awards as well as the probate court's order approving the temporary guardian's final account.

We affirm the probate court's judgment.

## BACKGROUND

Owens was 89 years of age when the events immediately underlying this guardianship proceeding unfolded. For a number of years, Owens had resided alone in Houston. During this time, Owens's daughter, Collins, managed her financial and medical affairs as her agent under a statutory durable power of attorney and medical power of attorney that Owens executed in 2011. After Hurricane Harvey damaged Owens's home in late August 2017, Owens temporarily moved in with her granddaughter, Aisha Ross. Owens later moved into an assisted living center for the elderly staffed by caregivers around the clock, which is where she resided during the pendency of this proceeding.

Ross and Collins became embroiled in disputes over the management of Owens's finances and medical care. Ross accused Collins of misappropriating assets from Owens and neglecting her medical care. In the course of these disputes, Owens

2

executed new, conflicting powers of attorney. In September 2017, Owens executed a durable power of attorney and a medical power of attorney, which named both Collins and Ross as agents. Two days later, Owens executed another statutory durable power of attorney and medical power of attorney that named Collins as her sole agent. Collins alleged that Ross had manipulated Owens into signing the first set of powers of attorney that Owens executed in 2017.

Ross applied for the appointment of a permanent guardian of Owens's person and estate in October 2017. Ross alleged that Owens had dementia and was totally incapacitated. Citing the conflicting powers of attorney, Ross also applied for the appointment of a temporary guardian. Collins opposed the appointment of a temporary or permanent guardian.

At various points in the proceeding, several other interested relatives appeared through counsel or otherwise. These include:

- Owens's two sons, Emiel and Melvin Owens;

- Owens's other daughter, Angela Owens-Sapp;

- Owens's grandson, Roy Collins IV; and

- Owens's nephew, Donald Owens.

For a time, Owens was also represented by her own counsel.

The probate court appointed Hattie Shannon as attorney ad litem in October 2017. It also appointed an investigator to meet Owens, consult her physicians, and

3

review records as to her health and finances. In December 2017, the investigator filed a report stating that Owens opposed the appointment of a guardian. But the investigator's report also noted that Adult Protective Services found that Collins had financially exploited Owens. Though the investigator reported that Owens was alert and appeared healthy, the investigator recommended that Owens undergo an independent medical examination to ascertain her capacity.

Previous exams had yielded conflicting results. After one exam performed in November 2017, Dr. Mitchell Alan Young concluded that Owens was not incapacitated. Based on another exam performed in November 2017, Dr. Kamayani Khare concluded that Owens was totally incapacitated. In an addendum, Dr. Khare noted that on the day of the exam she had an unexpected telephone conversation with Collins in which Collins acknowledged that Owens had mild dementia but nonetheless believed Owens to be competent and wanted to verify that Khare thought so too. Khare disagreed with Collins and told Collins so.

Collins opposed subjecting Owens to an independent medical examination. After a December 2017 hearing on the issue, the probate court ordered Owens to undergo an exam. The probate court did not make specific findings of fact, but its ruling appears to have been based on three undisputed facts: (1) that Adult Protective Services found Collins had financially exploited Owens; (2) that Owens did not know about significant payments that Collins had made from Owens's bank account;

4

and (3) that medical evidence indicated Owens possibly had memory problems. At or after the hearing, the probate court appointed Dana Drexler as temporary guardian of the person and estate of Owens.

In January 2018, Dr. Ali Abbas Asghar-Ali conducted an independent medical exam. He concluded that Owens had a history of stroke of mild severity and a major neurocognitive disorder of moderate severity. He further concluded:

- Owens had deficits in short-term memory, immediate recall, problem-solving, and ability to grasp abstract aspects of her situation;

- Owens was unable to make complex financial decisions, manage a bank account, operate an automobile, make decisions as to marriage, administer her own medications on a daily basis, engage in activities like cooking and cleaning, or make treatment decisions concerning her own healthcare;

- Owens physical and mental functioning would not improve; and

- it was in Owens's best interest to take medication for the care and treatment of dementia but she lacked the capacity required to give informed consent to the administration of this medication.

Overall, Asghar-Ali concluded that Owens was partially incapacitated—unable to perform some of the tasks required to care for herself or to manage her property—within the meaning of the Estates Code. Owens thus required a guardian to manage her finances, healthcare, and instrumental activities of daily life, like cleaning, cooking, shopping, and travel. Due to her partial incapacity, Asghar-Ali further concluded that Owens would not be able to understand and participate in a court hearing and should not appear at one.

Dr. Chris Merkl, a treating physician, performed an additional exam in April 2018. He concluded Owens was totally incapacitated.

Based on the exams made by Drs. Asghar-Ali, Khare, and Merkl, Drexler moved for appointment of a disinterested third-party as permanent guardian for Owens in September 2018. By this point, all family members other than Collins agreed that a disinterested third-party guardian should be appointed for Owens. Melbourne Berlinger, whom the probate court had appointed as guardian ad litem, also agreed that a disinterested third-party should be appointed as permanent guardian during a hearing that same month. Berlinger later formally moved to appoint a third-party guardian based on Owens's incapacity and familial discord.

The probate court ordered Collins to make an accounting of her management of Owens's finances. In September 2018, Collins filed an accounting. Based on the accounting, in November 2018, Adult Protective Services withdrew its finding that she had financially exploited Owens and instead concluded that the agency was unable to determine if Collins had done so. Drexler, Berlinger, and Shannon made various objections to Collins's accounting. Collins, in turn, moved to strike their objections.

The probate court, however, did not adjudicate this dispute about Collins's accounting or rule on the pending guardianship applications before Owens fell ill

and passed away. Owens suffered a massive stroke in late October 2018 and died in early January 2019. After Owens's death, Drexler filed a final account.

The Estates Code provides for payment of a temporary guardian, guardian ad litem, and attorney ad litem. Drexler, Berlinger, and Shannon requested payment of fees and/or expenses in applications they filed in January and February 2019.

Drexler requested $53,468 in fees and expenses. She supported her sworn application with a 36-page invoice detailing her activities, billing rate, time in quarter-hour increments, and expenses.

Berlinger requested $13,196.38 in fees and expenses. He supported his sworn application with a 4-page invoice detailing his activities, billing rate, time in quarter-hour increments, and expenses.

Shannon requested $15,000 in fees. She supported her sworn application with a 5-page invoice detailing her activities, billing rate, and time in quarter-hour increments. Though her total fees came to $27,525, she discounted this amount by $12,525. She did not include any expenses.

In March 2019, Collins objected to Drexler's, Berlinger's, and Shannon's payment requests. She submitted the affidavit of R. Dyann McCully, a lawyer specializing in estate planning and probate law, who opined that Drexler, Berlinger, and Shannon did not fulfill their duties.

Collins also asked the probate court to order Drexler to file an amended final account addressing certain property belonging to Owens's estate and to continue serving as temporary guardian until the probate court could hear separate litigation that had commenced between family members as to Owens's will and probate estate. Collins similarly maintained that Berlinger and Shannon continued to have ongoing duties to Owens's estate in the interim.

In April 2019, Drexler filed an amended final account. Later that month, the probate court held a hearing on the amended account, payment requests, and associated objections. At the hearing, attorney Gus Tamborello appeared in Drexler's stead because she was recovering from cancer-related surgery. The probate court asked if anyone objected to Drexler's absence. No one objected.

During the hearing, McCully testified in support of Collins's opposition to the temporary guardian's final account and amended final account. In general, McCully opined that the accounts were not detailed enough, lacked adequate supporting documentation, and did not explain the supporting documentation that was included. She also faulted the temporary guardian's failure to address income taxes in these accounts. McCully thus opined that the probate court should not approve them.

But McCully did not perform a forensic accounting of Drexler's final account or amended final account. McCully did not have the records necessary to do so and

8

did not request any records. Indeed, she first reviewed the final account and amended final account the day before the hearing.

McCully also testified in support of Collins's opposition to the payment requests. McCully opined that Shannon's payment request should be denied in its entirety because Shannon did not fulfill her duty as attorney ad litem to represent Owens, who opposed imposition of a guardianship. McCully opined that Berlinger did not fulfill his duty as guardian ad litem to act in Owens's best interest by failing to investigate and evaluate whether guardianship was necessary. Had Berlinger done so, McCully asserted, he would have opposed guardianship. McCully opined that Drexler did not fulfill her duty as temporary guardian to neutrally maintain the status quo and manage Owens's finances and care. According to McCully, Drexler was obligated to fulfill Owens's wishes to the extent possible but did not do so. Overall, McCully opined that neither a temporary nor permanent guardianship was necessary.

McCully's opinions, however, rested in significant part on the premise that the sole medical evidence consisted of Dr. Young's exam concluding Owens had the capacity to manage her own affairs. McCully was not aware of any contrary medical evidence, including the exams of Drs. Asghar-Ali, Khare, or Merkl.

McCully further opined that many of the fees and expenses identified in Shannon's, Berlinger's, and Drexler's invoices were not reasonable and necessary. Among other things, McCully objected to billing entries that were stated in quarter-

9

hour increments for activities that could not have taken fifteen minutes, should not have been billed at all as they were not legal in nature or should have been billed at a lower rate, or were unnecessary or beyond their respective court-appointed roles.

But McCully conceded that her review was limited to documents given to her by Collins's counsel. This did not include the documents referenced in the billing entries that she criticized. Her criticisms of Shannon's, Berlinger's, and Drexler's activities were based solely on the descriptions they provided in their invoices.

Geoffrey Sansom, whom the probate court appointed as an attorney ad litem for the limited purpose of evaluating the final account, also testified at the April 2019 hearing. He reviewed all case filings and concluded, after Drexler addressed his questions, that the probate court should approve the amended final account.

In May 2019, Drexler filed a second amended final account. That month, Drexler moved to close the guardianship proceeding.

Drexler and Berlinger each also filed a second payment request for fees incurred since their initial requests. Berlinger requested $4,462.50 in additional fees and submitted a supporting invoice detailing his activities, rate, and time. Drexler requested $3,700 in fees incurred by Gus Tamborello. Drexler supported this request with an affidavit made by Tamborello and Tamborello's invoice.

The probate court awarded all fees and expenses sought by Drexler, Berlinger, and Shannon. In June 2019, it approved the second amended final account and then closed the guardianship proceeding.

Collins moved for a new trial on several grounds, including that she had not received notice of Drexler's second amended final account, second request for payment, or motion to close the guardianship proceeding. Collins also argued that the evidence of fees and expenses was insufficient.

The probate court denied Collin's new-trial motion.

Collins appeals.

## DISCUSSION

### Procedural Issues on Appeal

As a preliminary matter, Collins objects to two of the briefs filed.

Collins objects to Berlinger's appellate brief on the ground that Berlinger did not timely file it. We previously granted Berlinger two extensions to file his brief. He sought a third extension, which we have not yet granted or denied, and filed his brief by the deadline he sought in his third motion for extension—May 1, 2020. His third motion for extension was premised in part on the disruption caused by Covid-19. Because we did not set this case for submission until September 3, and Collins has filed a reply brief responding to Berlinger's appellate arguments on the merits, Berlinger's delay in filing his brief has neither harmed Collins nor impeded our

resolution of this appeal. Thus, we grant Berlinger's third motion for extension, which makes his brief timely filed, and overrule Collins's objection to his brief.

Collins also objects to Ross's brief. Because Ross's brief does not address Collins's specific points of error, we have disregarded it in deciding this appeal.

## Substantive Issues on Appeal

Collins challenges the probate court's orders awarding fees and expenses to Drexler, Berlinger, and Shannon. She also challenges the probate court's order approving Drexler's second amended final account. Collins does not challenge any other rulings, including the probate court's appointment of Drexler as temporary guardian or its order requiring Owens to undergo an independent medical exam.

## Standard of Review for Fee Awards

The parties all agree that fee awards in guardianship proceedings are subject to review for abuse of discretion. *See, e.g.*, *Epstein v. Hutchison*, 175 S.W.3d 805, 807 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (fees awards to guardian generally reviewed for abuse of discretion). A probate court abuses its discretion in awarding fees if its ruling is arbitrary, unreasonable, made without reference to guiding legal principles, or unsupported by the evidence. *Anderson v. McCormick*, Nos. 01-12-00856-CV & 01-12-00857-CV, 2013 WL 5884931, at *4 (Tex. App.—Houston [1st Dist.] Oct. 31, 2013, no pet.) (mem. op.). Because a probate court has no discretion to misinterpret or misapply the law, it also abuses its discretion in

awarding fees if its ruling is contrary to the law. *See Epstein*, 175 S.W.3d at 807. To the extent our review of the reasonableness and necessity of fees turns on disputed evidence, we will reverse only if no evidence supports the factfinder's finding or its finding is so contrary to the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Celanese Chem. Co. v. Burleson*, 821 S.W.2d 257, 260–61 (Tex. App.—Houston [1st Dist.] 1991, no writ) (applying traditional legal and factual sufficiency standards in dispute as to whether trial court abused discretion in awarding fees to guardian ad litem).

**Attorney Ad Litem's Fees**

Collins contends the probate court erred in awarding fees to Shannon on three distinct grounds. First, Collins argues that because Shannon did not oppose guardianship or an independent medical examination consistent with Owens's wishes, she failed to fulfill her duties as attorney ad litem, which disentitles her to fees. Second, Collins argues that Shannon's fees were excessive. Third, Collins argues that Shannon did not testify that her fees were reasonable and necessary.

An attorney ad litem "is entitled to reasonable compensation for services provided in the amount set by the court, to be taxed as costs." TEX. EST. CODE § 1054.007(b). An appointed attorney ad litem has a right to compensation regardless of the outcome of the proceeding. *See In re Guardianship of Glasser*, 297

S.W.3d 369, 378 (Tex. App.—San Antonio 2009, no pet.) (construing Probate Code's predecessor provision on attorney ad litem fees).

Shannon filed an answer in which she generally denied that a guardianship was necessary and demanded that Ross be required to prove its necessity. At the December 2017 hearing, Shannon told the court that Owens opposed Ross's application to be appointed as Owens's guardian. Collins argues that Shannon should have also demanded an evidentiary hearing to oppose the independent medical examination and objected to the appointment of a temporary guardian for lack of evidence that one was needed. But at the December 2017 hearing it was undisputed that Adult Protective Services found that Collins had financially exploited Owens,[1] Owens was unaware of significant payments that Collins had made from her bank account, and Owens might have memory problems. The court-appointed investigator had recommended an independent medical exam.

Evidence later emerged that Owens lacked capacity. Three of the four doctors who examined Owens concluded she was incapacitated in whole or part within the meaning of the Estates Code. Collins's expert, McCully, was unaware of these doctors' conclusions when she opined that Shannon failed to do her duty. McCully

---

[1] Adult Protective Services later withdrew this finding, but Collins does not suggest Shannon reasonably could have ignored or disregarded this finding at the time of the December 2017 hearing. Notably, whether Collins had financially exploited Owens remained unadjudicated by the probate court when Owens died.

therefore did not address whether Shannon could or should have continued to oppose guardianship under these circumstances. *See* EST. § 1054.001 (attorney ad litem represents proposed ward's interests); TEX. R. DISC. PROF'L CONDUCT R. 1.02(g) (requiring lawyer to take reasonable action to secure appointment of guardian for, or seek other protective orders as to, client whenever lawyer reasonably believes client is incompetent or that these actions should be taken to protect client).

On this record, the probate court could have reasonably found that Shannon did not fail to fulfill her duty as attorney ad litem. The probate court therefore did not abuse its discretion by implicitly rejecting Collins's contrary argument.

As to the excessiveness of Shannon's fees, Collins complains on appeal that Shannon billed for a minimum of 15 minutes' time regardless how much time a task actually took her to complete, so that she effectively billed $87.50 for every e-mail she reviewed. Collins makes no other specific complaints on appeal.

Collins does not identify specific time entries in Shannon's invoice or explain why these particular entries are unreasonable. She instead refers us to a single page of McCully's testimony at the April 2019 hearing. The probate court heard McCully's testimony, including her concession that she did not review the documents underlying the time entries. Because McCully did not know the contents of these various e-mails or even their length, the probate court, in its role as factfinder, could have reasonably found her opinion as to the degree of attention

these e-mails merited in the context of this contentious proceeding unpersuasive. *See Fuentes v. Zaragoza*, 555 S.W.3d 141, 172 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (reasonableness of fee is fact question); *Gonyea v. Scott*, 541 S.W.3d 238, 244 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (when trial court acts as factfinder it decides credibility of witnesses and weight their testimony should be given). On this record, the probate court did not abuse its discretion in rejecting Collins's complaint that Shannon's requested fees were unreasonable or excessive.

Collins's complaint that Shannon did not testify her fees were reasonable and necessary is inaccurate. In her payment request, Shannon included a verification swearing under oath that the fees stated in her invoice were reasonable and necessary. The probate court thus did not abuse its discretion by awarding Shannon's fees in the absence of testimony as to their reasonableness or necessity.

### Guardian Ad Litem's Fees

Collins contends the probate court erred in awarding fees to Berlinger on four distinct bases. First, Collins argues that because Berlinger did not oppose guardianship, he failed to fulfill his duties as guardian ad litem, which disentitles him to fees. Second, Collins argues that Berlinger's fees were excessive. Third, Collins argues that the Estates Code requires the probate court to set the compensation of a guardian ad litem in advance of the performance of services rather than entertain an application for fees after the performance of services. Fourth,

16

Collins argues that some of Berlinger's fees relate to the defense of his fee request, which are not recoverable because they were incurred for his own benefit.

A guardian ad litem "is entitled to reasonable compensation for services provided in the amount set by the court, to be taxed as costs." EST. § 1054.055(a). Like an attorney ad litem, an appointed guardian ad litem has a right to compensation regardless of the outcome of the proceeding. *See In re Guardianship of Glasser*, 297 S.W.3d at 378 (holding so with respect to attorney ad litem under indistinguishable compensation provision).

Collins argues that Berlinger failed to fulfill his duty as guardian ad litem because he did not make an effort to avoid guardianship as desired by Owens. Collins also faults Berlinger for failing to investigate the suitability of Collins for appointment as Owens's guardian, if guardianship was necessary, as well as the allegation that Collins had financially exploited Owens. Had Berlinger investigated, Collins maintains, he would have known that Collins did not exploit Owens.

A guardian ad litem has no duty to advocate for a ward's preferences. Rather, his role is to represent and protect the ward's interests. *See* EST. §§ 1054.051, 1054.054(b) (guardian ad litem represents and protects interests of incapacitated person). In doing so, the guardian ad litem must investigate whether guardianship is necessary and evaluate possible alternatives. *Id.* § 1054.054(c).

17

The probate court appointed Berlinger in February 2018. By then, Owens had undergone a court-ordered independent medical exam. Based on this exam, Dr. Asghar-Ali opined that Owens could not make complex financial decisions, manage a personal bank account, administer her own medications, give informed consent for purposes of healthcare, or perform instrumental activities of daily life like cleaning, cooking, shopping, or traveling. Collins's expert, McCully, was unaware of this fact when she testified that Berlinger did not fulfill his duties as guardian ad litem by opposing the appointment of a guardian. Nor was McCully aware of the other evidence of Owens's incapacity.

The probate court ordered Collins to account for her management of Owens's finances. Collins filed an accounting in September 2018. But the probate court did not decide whether this accounting adequately addressed the allegations of financial exploitation before Owens died. McCully did not explain how Berlinger could have urged that Collins be appointed as Owens's guardian or remain in charge of Owens's finances and medical care under existing powers of attorney in light of this unresolved dispute, except to assert that Berlinger should have independently investigated the matter and concluded that Collins was blameless. To the extent McCully asserted that Berlinger refused to even investigate the possibility that Collins's was blameless, she relied on a letter written by Collins's counsel making this assertion. Berlinger, however, joined Drexler and Shannon in filing written

objections to Collins's accounting, which is some evidence that he did in fact consider Collins's accounting but found it wanting.

On this record, the probate court could have reasonably found that Berlinger did not fail to fulfill his duty as guardian ad litem. The probate court therefore did not abuse its discretion by implicitly rejecting Collins's contrary argument.

As to the excessiveness of Berlinger's fees, Collins makes the same basic complaint on appeal about his fees that she does about Shannon's. That is, Collins complains that Berlinger billed 15 minutes' time regardless how much time he actually spent on a task, including for reviewing simple correspondence. Once again, however, Collins does not discuss specific time entries in Berlinger's invoice or explain why these particular entries are unreasonable. She instead relies on McCully's general testimony that billing a quarter-hour for this type of work is not reasonable. But as previously discussed, McCully conceded she did not review the documents underlying the time entries. Because McCully did not know the contents or length of the correspondence in question, the probate court, in its role as factfinder, could have reasonably found her opinion as to the degree of attention correspondence merited in the context of this contentious proceeding unpersuasive. *See Fuentes*, 555 S.W.3d at 172 (reasonableness of fee is fact issue); *Gonyea*, 541 S.W.3d at 244 (trial court as factfinder decides weight to give testimony). On this

record, the probate court therefore did not abuse its discretion in rejecting Collins's complaint that Berlinger's requested fees were unreasonable or excessive.

Collins further argues that the Estates Code requires a probate court to set the amount of compensation a guardian ad litem receives in advance of the performance of services. She relies on the Code's provision stating that a guardian ad litem "is entitled to reasonable compensation for services provided in the amount set by the court." EST. § 1054.055(a). Collins contends that this statutory language can only be interpreted to mean that a probate court must decide the rate and method of a guardian ad litem's billing at the outset of his appointment. We disagree.

The statute does not include any language expressly requiring an advance determination. In this context, the verb *set* simply means *decided on*. *See* NEW OXFORD AMERICAN DICTIONARY 1597 (3d ed. 2010) (defining "set" as to "decide on"); *see also Holloway v. Butler*, 828 S.W.2d 810, 812 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (noting that statutes authorizing trial courts "to appoint and set reasonable compensation" for guardian ad litem and others have existed for decades and legislature has set no guidelines for determination of these fees other than reasonableness). Thus, the Estates Code provides for reasonable compensation in the amount decided on by the court. The Code does not mandate that the probate court make this decision at a particular time or that it do so by a particular method.

The probate court therefore did not abuse its discretion in failing to set a rate or method of billing for the guardian ad litem at the outset of his appointment.

Collins also argues that Berlinger incurred some of the fees that he was awarded by the probate court in defense of his payment request. Collins maintains that Berlinger cannot recover these particular fees because they were incurred for his own benefit rather than in fulfillment of his duties as guardian ad litem.

There is a split of authority on this issue. At least one court of appeals has held that a guardian ad litem cannot recover fees incurred in defense of his request for compensation. *See Goodyear Dunlop Tires N. Am. v. Gamez*, 151 S.W.3d 574, 587 (Tex. App.—San Antonio 2004, no pet.) (guardian ad litem not entitled to compensation for drafting fee statement, preparing for fee hearing, or defending fees at hearing); *Holt Tex., Ltd. v. Hale*, 144 S.W.3d 592, 597–98 (Tex. App.—San Antonio 2004, no pet.) (trial court abused its discretion in awarding guardian ad litem fees for 15 hours spent seeking to recover fees); *see also In re Guardianship of Glasser*, 297 S.W.3d at 378–79 (holding same as to attorney ad litem). But at least one other court has held that such fees are recoverable. *See DeSai v. Islas*, 884 S.W.2d 204, 206 (Tex. App.—Eastland 1994, writ denied) (guardian ad litem entitled to recover fees incurred in defense of fees). Our court does not appear to have answered this question. *But cf. J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 97 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (trial court did not abuse

21

discretion by denying attorney ad litem conditional award of appellate fees because appellate fees were not incurred in fulfillment of his duties as ad litem given that there was no conflict of interest between guardian and ward on appeal).

Though we think the question is a significant one, we decline to answer it here because Collins did not make this objection in the probate court, including in her new-trial motion, and the probate court thus did not rule on it. As a court of appeals, we review a trial court's rulings for error. *See* TEX. R. APP. P. 33.1(a) (to present complaint for appellate review record must show party made complaint in trial court and trial court implicitly or explicitly ruled or refused to do so). A party generally cannot use an appeal to present new issues she did not raise below. *See Chevriere v. Mitchell*, No. 01-18-00761-CV, 2019 WL 1996498, at *2 (Tex. App.—Houston [1st Dist.] May 7, 2019, no pet.) (mem. op.) (courts of appeals are primarily courts of review and ordinarily don't address issues not ruled on by trial court). We thus hold that Collins failed to preserve any error associated with this issue.

**Temporary Guardian's Fees**

Collins contends the probate court erred in awarding fees to Drexler on three distinct grounds. First, Collins argues that because Drexler did not adequately provide for Owens's medical care, failed to make insurance payments, and did not file a proper accounting, she failed to fulfill her duties as temporary guardian. Collins also argues that Drexler exceeded her statutory authority as temporary guardian by

filing guardianship applications. These acts, Collins contends, disentitle Drexler to fees. Second, Collins argues that Drexler's fees were excessive. Third, Collins argues that some of Drexler's fees relate to the defense of her payment request, which are not recoverable as they were incurred for her own benefit.

A probate court "may authorize compensation for a guardian serving as a guardian of the person alone from available funds of the ward's estate or other funds available for that purpose." EST. § 1155.002(a). A "guardian of an estate is entitled to reasonable compensation on application to the court at the time the court approves an annual or final accounting." *Id.* § 1155.003(a). The probate court may deny compensation in whole or part if the court finds the guardian did not adequately perform her duties or if it removed the guardian for cause. *Id.* § 1155.008. In addition, when, as here, a qualified guardian is authorized to perform legal services on behalf of the ward's estate and does so, she may be compensated for her legal services in addition to being compensated for her services as guardian of the person and estate. *See Epstein*, 175 S.W.3d at 807–10 (relying on *Henderson v. Viesca*, 922 S.W.2d 553, 557–58 (Tex. App.—San Antonio 1996, writ denied)).

Collins argues that Drexler failed to fulfill her duty to adequately provide for Owens's medical care by depriving Owens of a phone paired with a cochlear implant that allowed her to better communicate with family members. In support of this argument, Collins's relies on McCully's testimony at the April 2019 hearing. But

23

McCully conceded that she, in turn, relied on a letter written by Collins's counsel for her knowledge of this subject. The record contains no evidence on the issue.

As to Drexler's ostensible failure to make certain insurance payments, McCully testified that these failures were egregious because they resulted in the lapse of a home insurance policy and a long-term care policy. But McCully's testimony about these policies was based on a letter that Collins's counsel wrote to Drexler. When asked whether she had seen any proof or documentation that Drexler was responsible for the lapse of these policies, McCully conceded that she had not.

With respect to Drexler's final account and amended final account, McCully in essence opined that it was too summary in nature and lacked adequate supporting documentation. But McCully acknowledged that she had not reviewed the case file and thus was unaware of any other documents relating to Drexler's management of the estate that may have been filed beforehand. In addition, Sansom contradicted McCully by opining that Drexler's amended final account was adequate.

McCully opined that Drexler exceeded her authority by seeking an extension of the temporary guardianship and the appointment of a third-party permanent guardian. But McCully agreed that a temporary guardian has the authority specified in the probate court's order. *See* EST. § 1251.101(c). She further agreed that the probate court's order appointing Drexler was "very broad," giving Drexler authority not unlike the authority a permanent guardian might possess. McCully later

conceded that Drexler was allowed to seek the appointment of a third-party permanent guardian but opined that it was improper to do so. McCully's opinion as to the impropriety of doing so, however, was premised on her mistaken belief that the only medical evidence in the record showed Owens to be competent.

On this record, the probate court could have reasonably found that Drexler did not fail to fulfill her duty as temporary guardian. The probate court therefore did not abuse its discretion by implicitly rejecting Collins's contrary argument.

As to the excessiveness of Drexler's fees, Collins makes the same general argument on appeal that she does as to Shannon's and Berlinger's fees. Collins complains that Drexler billed 15 minutes' time regardless how much time she actually spent on a task, including for reviewing correspondence. Once again, however, Collins does not discuss specific time entries in Drexler's invoice or explain why these particular entries are unreasonable. Collins instead relies on McCully's general testimony that billing a quarter-hour for this type of work is not reasonable. But as previously discussed, McCully conceded she did not review the documents underlying the time entries. Because McCully did not know the contents or length of the correspondence in question, the probate court, in its role as factfinder, could have reasonably found her opinion as to the degree of attention correspondence merited in the context of this contentious proceeding unpersuasive. *See Fuentes*, 555 S.W.3d at 172 (reasonableness of fee is fact issue); *Gonyea*, 541

S.W.3d at 244 (trial court as factfinder decides weight to give testimony). On this record, the probate court therefore did not abuse its discretion in rejecting Collins's complaint that Drexler's requested fees were unreasonable or excessive.

In addition, in her argument about the excessiveness of Drexler's fees, Collins includes a general citation to 45 consecutive pages of McCully's testimony at the April 2019 hearing in which McCully identified a multitude of billing entries in Drexler's initial 36-page invoice as being unreasonable or unnecessary on various grounds. But Collins does not present any substantive discussion or analysis as to these numerous entries in her briefing to this court. We hold that Collins has waived any error as to Drexler's fees corresponding to these entries by failing to adequately brief the subject. *See* TEX. R. APP. P. 38.1(i); *Eagle Oil & Gas Co. v. Shale Expl.*, 549 S.W.3d 256, 286 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

Collins argues that Drexler's second invoice for Tamborello's fees relating to the April 2019 hearing are not recoverable because they were incurred in defense of her payment request rather than in fulfillment of her duties as temporary guardian.

As an initial matter, we disagree with Collins's assertion that Tamborello's services exclusively relate to the defense of Drexler's fees. The April 2019 hearing was not limited to the payment requests of Drexler, Berlinger, and Shannon. That hearing also addressed two other matters: whether the probate court should strike Drexler's, Berlinger's, and Shannon's objections to Collins's accounting of her

26

management of Owens's finances and whether the probate court should approve Drexler's amended final account. Collins does not contend that either of these other two matters were for Drexler's own benefit. Nor could Collins do so. We also note that Collins's expert, McCully, agreed that the probate court authorized Drexler to retain attorneys as necessary in the administration of the estate.

To the extent Collins claims the probate court should have disallowed some unidentified subset of Tamborello's fees because they were incurred in defense of Drexler's fees and thus are unrecoverable, Collins did not make this objection in the probate court, including in her new-trial motion, and the probate court did not rule on it. We hold that Collins waived any error associated with these fees. *See* TEX. R. APP. P. 33.1(a); *Chevriere*, 2019 WL 1996498, at *2; *see also Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 516 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (party who doesn't object to failure to segregate legal services for which fees are recoverable from those for which fees are unrecoverable waives error).

## Temporary Guardian's Final Account

Collins contends the probate court erred in approving Drexler's second amended final account on two grounds. First, she argues that Drexler failed to sign the account, which makes it defective. Second, she argues that Drexler failed to serve the second amended account on Collins's counsel, which deprived Collins of the opportunity to make objections to the final account before it was approved.

27

Collins does not state a standard of review for evaluating this issue. Drexler contends the standard of review is abuse of discretion. We are aware of at least one opinion reviewing the probate court's findings for evidentiary sufficiency. *See In re Guardianship of Tischler*, 505 S.W.3d 73, 76 (Tex. App.—San Antonio 2016, no pet.); *see also Bozeman v. Kornblit*, 232 S.W.3d 261, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (order approving final account not final and appealable until proceeding is closed). Because Collins's arguments are based on a mistake of fact about the record and an ostensible error that did not harm her, we need not decide the proper standard of review.

Collins's assertion that Drexler's second amended final account is unsigned and thus defective is factually incorrect. The clerk's record shows Drexler signed and verified the second amended final account. A file memo in the clerk's record indicates that the district clerk's office initially omitted the signature page through inadvertence. Drexler signed the second amended final account. Collins's assertion to the contrary is simply wrong.

Drexler's second amended final account was electronically filed. Assuming Collins nonetheless did not receive notice of it, she argues this lack of notice deprived her of the opportunity to object to the second amended final account. *See* EST. § 1204.105 (requiring clerk to issue citation when final account is presented for approval); *id.* § 1204.106(b) (court to hear objections to account). But the sole

28

deficiencies with the second amended final account that Collins identifies on appeal are the same deficiencies she complained about with respect to the prior final account and amended final account. In other words, she already presented these objections to the probate court, which rejected them. She also raised lack of notice as to the second amended final account in her new-trial motion, which the probate court denied. Collins does not appeal from the probate court's order denying that motion.

On this record, we hold that the probate court's failure or refusal to hear the exact same objections a second time, if erroneous, is not reversible because it did not probably cause the rendition of an improper judgment or probably prevent Collins from properly presenting her appeal. *See* TEX. R. APP. P. 44.1(a). With respect to the presentation of her appeal, we note that Collins's brief does not contain any substantive discussion or analysis as to the deficiencies of the second amended final account or Drexler's prior accounts. Thus, to the extent Collins intends to raise these deficiencies for a decision on the merits, we further hold that Collins has waived any error relating to Drexler's accounts by failing to adequately brief the issue. *See* TEX. R. APP. P. 38.1(i); *Eagle Oil & Gas Co.*, 549 S.W.3d at 286.

**CONCLUSION**

We affirm the probate court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.